UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | : | Case No. 3:11-cv-283 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| KIRK A. HIMMELBERG, *et al.*, | : | |
| Defendants/Third-Party Plaintiffs, | : | |
| vs. | : | |
| DIGITAL DISH, INC., *et al.*, | : | |
| Third-Party Defendants. | : | |

**ORDER THAT THIRD-PARTY DEFENDANTS' MOTION TO DISMISS (Doc. 21) IS GRANTED**

This civil action is currently before the Court on Third-Party Defendants'[1] motion to dismiss (Doc. 21) and the parties' responsive memoranda (Docs. 23, 24).

### I. INTRODUCTION

This action arises out of the viewing of a pay-per-view boxing fight shown on televisions at a bar run by Defendants/Third-Party Plaintiffs.[2] (Doc. 23 at 2). Plaintiff Joe Hand Promotions ("Joe Hand") alleges that it had the exclusive distribution rights for the pay-per-view boxing fight, and that the boxing fight was available for viewing only by residential cable or satellite customers, not by commercial establishments like bars. (*Id.*)

---

[1] Third-Party Defendants include Digital Dish, Inc. and DISH Network L.L.C. (collectively, "DISH").

[2] Defendants/Third-Party Plaintiffs include Kirk A. Himmelberg and Himmelberg Realty, L.L.C., as the alter ego of Atmosphere Nightclub (collectively, "Himmelberg").

As a result, Joe Hand brings the following three claims against Himmelberg:

    A.    Violation of The Communications Act of 1934, 47 U.S.C. § 605, (Count I) (Doc. 1 at ¶ 15);

    B.    Violation of The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, (Count II) (*Id.* at ¶ 20); and

    C.    Conversion under Ohio law (Count III) (*Id.* at ¶ 24).

Himmelberg subsequently filed a third-party complaint against DISH alleging that to the extent Himmelberg is found liable to Joe Hand for viewing the pay-per-view fight, DISH should "indemnify . . . [Himmelberg] . . . for all damages, [costs,] and attorney fees" owed to Joe Hand because DISH "caused the happenings for which [] Himmelberg . . . is now being sued." (Doc. 18 at ¶ 16; Doc. 23 at 2). However, DISH argues that even if the Court takes all of Himmelberg's factual allegations as true, Himmelberg's claims should be dismissed as a matter of law because there is no right to indemnification nor contribution under the applicable federal and state laws. (Doc. 21 at 1; Doc. 24 at 5).

## II. FACTUAL BACKGROUND AS ALLEGED BY THIRD-PARTY PLAINTIFFS

On November 5, 2008, DISH installed the necessary equipment to provide Himmelberg's club, known as Atmosphere Nightclub,[3] with direct broadcast satellite television service in the club's bar and common areas accessible to its patrons. (Doc. 18 at ¶ 2). After completing the installation, DISH presented Himmelberg with a standard

---

[3] "At all relevant times, [] Himmelberg [] operated 'Atmosphere Nightclub' in a shopping center in suburban Dayton." (Doc. 18 at ¶ 1).

form contract in Himmelberg's personal name rather than in his company's name; and the contract appeared to be an agreement for residential satellite television service. (*Id.* at ¶ 3). When Himmelberg made DISH aware of this fact, DISH told Himmelberg that the residential contract was the proper contract, and that Himmelberg had to sign it in his individual capacity if Atmosphere Nightclub were to have satellite television service. (*Id.* at ¶¶ 4, 5).

On December 12, 2009, one of Himmelberg's employees at Atmosphere Nightclub called DISH's toll-free customer service number and asked a DISH representative how much it would cost to order the pay-per-view boxing fight known as "Ultimate Fighting Championship 107: Penn v. Sanchez" ("the fight"). (Doc. 18 at ¶ 8). DISH's customer service representative told Himmelberg's employee that it could order the right to view the fight for $44.99. (*Id.* at ¶ 10). Himmelberg believes that DISH's customer service representative "checked [Himmelberg's] Atmosphere[] [Nightclub's] account, saw that it was listed as a residential account, and assumed that Atmosphere [Nightclub] was eligible to view the [fight]." (*Id.* at ¶ 9). Himmelberg alleges that DISH, "by their conduct[], . . . represented to [Himmelberg that] Atmosphere Nightclub could lawfully view the [fight]." (*Id.* at ¶ 13). As a result, Himmelberg ordered the fight, which Joe Hand distributed via cable and satellite television, and tuned Atmosphere Nightclub's televisions to the fight that same night. (*Id.* at ¶¶ 11, 14; Doc. 21 at 2). Himmelberg alleges that he "did not know of any prohibition against the[] viewing of the fight." (Doc. 23 at 2).

### III. STANDARD OF REVIEW

DISH moves the Court for an order dismissing Himmelberg's third-party complaint for failure to state a claim upon which relief may be granted. A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a plaintiff's obligation to provide the grounds of [his or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 556, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

## IV.  ANALYSIS

### A.  Indemnity or contribution for federal law claims under 47 U.S.C. § 605 and 47 U.S.C. § 553 (Counts I and II, respectively)

Himmelberg claims that if he is found liable to Joe Hand for viewing the fight in violation of § 605 and § 553, then DISH is obligated to indemnify him for any damages owed to Joe Hand. (Doc. 18 at ¶ 16). Conversely, DISH contends that there is no right to indemnification or contribution under either § 605 or § 553. (Doc. 21 at 3).

The issue before the Court is whether a right to indemnification or contribution exists for violations of § 605 or § 553. "Under federal law, '[a] defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law.'" *Wagner v. Circle W. Mastiffs*, No. 2:08-CV-00431, 2010 U.S. Dist. LEXIS 23100, at *27 (S.D. Ohio Mar. 12, 2010) (citing *Doherty v. Wireless Broad. Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1130-31 (9th Cir. 1998)).

First, as the Ninth Circuit held in *Doherty*, "[t]he explicit language of Sections 553 and 605 do[es] not provide any right to indemnification or contribution." 151 F.3d at 1131.[4] Moreover, "[t]here is no indication in the legislative history that Congress intended to grant violators of Section 553 or Section 605 a right to indemnification." *Id.* Likewise, "[t]here is no indication in the structure of the remedial provisions that

---

[4] There is no Sixth Circuit case law on point.

Congress intended a violator to have a right to indemnity.  The remedial provisions in both Sections 553 and 605 take into consideration the degree of the violator's culpability and provide for reduced damages in those instances where the violator was unaware of the violation." *Id.*

Second, "this is not an appropriate case for the federal courts to recognize a federal common law right.  The creation of a right under federal common law is appropriate only where there are unique federal interests at stake. . . . There are no such unique federal interests involved in this case." *Doherty*, 151 F.3d at 1131.

Finally, because the variable nature of damages under both statutes takes into account the fact that the alleged violator may not have committed the violation intentionally or even knowingly, "[c]reating a federal common law right to seek indemnity for such damages would undermine the regulatory function of the Act itself."[5] *Don King Productions/Kingvision v. Ferreira*, 950 F. Supp. 286, 289 (E.D. Cal. 1996) (citing *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 676 (9th Cir. 1980)).  Thus, since the damage phase under § 605 and § 553 already apportions fault, a claim for indemnification or contribution is unnecessary.  *Id.*

---

[5] Both statutes provide a minimum level of statutory damages even for those violators who are not aware that they have violated the statute:  "In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100" under § 553 and "to a sum of not less than $250" under § 605.  47 U.S.C. § 553(c)(3)(C); 47 U.S.C. § 605(c)(3)(C)(iii).

Himmelberg offers no persuasive basis upon which to distinguish *Doherty*, and the Court has neither been apprised of nor discovered any precedential Sixth Circuit cases opposing the Ninth Circuit's conclusion. Therefore, like the Northern District of Ohio, this Court finds the reasoning in *Doherty* persuasive.[6]

Accordingly, Himmelberg's federal claims for indemnity and contribution fail as a matter of law.

**B.     Indemnity or contribution for state law claim of conversion (Count III)**

Himmelberg also claims that he is entitled to indemnification from DISH if he is found liable to Joe Hand for conversion. (Doc. 18 at ¶ 16). Conversely, DISH argues that there is no right to indemnification or contribution under Ohio law for an intentional tort, such as conversion. (Doc. 24 at 5).

The issue before the Court is whether a right to indemnification or contribution exists under Ohio law for the tort of conversion.[7] Pursuant to Ohio Rev. Code § 2307.25(A), "[t]here is no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established." Ohio common law also makes clear that "an intentional tort-feasor cannot recover under either indemnity or

---

[6] *See J & J Sports Prods., Inc. v. Kennedy*, No. 1:10-CV-02740 (N.D. Ohio Nov. 3, 2011) (following the Ninth Circuit's reasoning in *Doherty* and holding that "neither Sections 605 and 553, nor federal common law support a claim for contribution or indemnification for violations of th[ose] . . . statutes"). (*See* Doc. 24, Exhibit A).

[7] The elements of conversion are the: "1) plaintiff's actual or constructive possession or immediate right to possession of the property; 2) defendant's wrongful interference with plaintiff's rights; and 3) damages." *Allied Erecting Dismantling Co. v. City of Youngstown*, 783 N.E.2d 523, 537 (Ohio Ct. App. 2002).

contribution." *Lapanja v. Schmidt Realty Co.*, No. CA-6827, 1986 Ohio App. LEXIS 7125, at *5 (Ohio Ct. App. June 9, 1986).

Moreover, Ohio courts have held that conversion is an intentional tort. *See, e.g., Geiger v. King*, 815 N.E.2d 683, 684 (Ohio Ct. App. 2004). Conversion is an intentional tort in the sense that the alleged tortfeasor's action must be willful, although he or she does not need to intend the consequences. *Erie Ins. Exch. v. Lansberry*, No. 7-CO-6, 2008 Ohio App. LEXIS 1351, at *25 (Ohio Ct. App. Mar. 10, 2008). The focus is on "whether the [alleged tortfeasor] [] intended the act which interfered with the owner's property rights, not on whether the [alleged tortfeasor] [] intentionally interfered with those property rights." *Id.* Thus, "one is liable for conversion even if he [or she] acted under a mistaken assumption."[8] *Id.*

Therefore, since Ohio law does not recognize a right to indemnification or contribution for the intentional tort of conversion, Himmelberg's state claim fails as a matter of law.

## V. CONCLUSION

Accordingly, based on the foregoing, DISH's motion to dismiss (Doc. 21) is **GRANTED**, the third-party complaint is dismissed, and Digital Dish, Inc. and DISH Network L.L.C. are terminated as parties to this action.

---

[8] For example, "both a defendant who has taken a vehicle with the intent to permanently dispossess its owner and a defendant who merely borrows the vehicle from the owner and, due to a mistake, does not return it in a timely fashion[,] have converted the vehicle." *Id.*

**IT IS SO ORDERED.**

Date:  April 5, 2012                                         *s/ Timothy S. Black*
                                                                         Timothy S. Black
                                                                         United States District Judge